**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 19-cr-10459 |
| | ) | |
| v. | ) | |
| | ) | |
| JUAN FIGUEROA, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT JUAN FIGUEROA'S SENTENCING MEMORANDUM**

The Defendant, Juan Figueroa, submits this memorandum with respect to the application of 18 U.S.C. § 3553(a) to the facts and circumstances of his offense. Mr. Figueroa tendered his plea pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) with an agreed upon sentencing range of 15 to 27 months. For the reasons reflected in the memorandum and to be discussed at the sentencing hearing, Mr. Figueroa respectfully submits that a sentence of 15 months of incarceration, 36 months of supervised release, and a $100 special assessment is sufficient but not greater than necessary to achieve the purpose of sentencing.

**I.  Introduction**

Mr. Figueroa is a young man who has already overcome serious challenges. As a teenager, he was diagnosed with Acute Myeloid Leukemia. Although Mr. Figueroa is currently in remission, his treatment left him with vision impairments and neurological damage, which causes him chronic pain. It also forced him to complete parts of his education via home schooling, isolating him from his peers.

In an attempt to "fit in" after being isolated due to illness, Mr. Figueroa fell in with a violent crowd, which led to him being charged with this crime. Wanting to accept responsibility

1

for what he had done and set an example for his son, he decided to plead guilty and enter into a binding plea agreement. Mr. Figueroa is remorseful and ready to turn his life around for his own sake and that of his son.

As discussed more fully below, an appropriate sentence – one that is sufficient, but not greater than necessary – is 15 months of incarceration, 36 months of supervised release, and a $100 special assessment. Such a sentence is a significant punishment, reflective of the seriousness of the crime to which Mr. Figueroa has pleaded guilty, but also acknowledges Mr. Figueroa's true remorse for his actions.

**II.      A Sentence of 15 Months of Incarceration, 36 Months of Supervised Release, and a $100 Special Assessment is a Sufficient but Not Greater than Necessary Sentence Under § 3553(a)**

Following *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are "merely advisory, which means that the district court has considerable leeway to impose a sentence that falls outside the range suggested." *See United States v. Robinson*, 433 F.3d 31, 35 (1st Cir. 2005). The guidelines "are still generalizations that can point to outcomes that may appear unreasonable to sentencing judges," and *Booker* allows courts "to impose non-guideline sentences that override guidelines, subject only to the ultimate requirement of reasonableness." *See United States v. Jimenez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006). In crafting an appropriate sentence, the court must consider the factors set out in 18 U.S.C. § 3553(a) and impose a sentence that is "sufficient, but not greater than necessary" to achieve the goals of sentencing. 18 U.S.C. § 3553(a); *Kimbrough v. United States*, 552 U.S. 85, 101 (2007).

A discussion of each of the § 3553(a) factors follows.

**A.  The Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

      1.  The History and Characteristics of the Defendant

Mr. Figueroa was born on July 14, 1995 in Boston, Massachusetts. PSR ¶ 106. Although his parents separated when he was young, he was raised by both and had a loving childhood. *Id.* at ¶ 107. Mr. Figueroa also has two maternal half siblings – a younger brother and sister – with whom he is very close. *Id.* at ¶¶ 110, 111.

His father, who owned a small restaurant, worked very hard to provide for his family. *Id.* at ¶ 108. As a child, Mr. Figueroa would help his father at the restaurant. It was there that he developed a passion for cooking.

When he was just a teenager, Mr. Figueroa was diagnosed with Acute Myeloid Leukemia. *Id.* at ¶ 122. He was treated with chemotherapy, radiation, and bone marrow transplants. *Id.* While Mr. Figueroa is currently in remission, he requires close monitoring for signs of disease relapse. *Id.* His treatments also left him with vision impairments and neurological damage to his legs and lower back, which causes him chronic pain. *Id.*

Furthermore, although Mr. Figueroa managed to graduate from high school, he was forced to complete parts of his education via home schooling, isolating him from his peers. *Id.* at 129. Shortly after graduation, Mr. Figueroa became involved with a young woman with whom he had a son. *Id.* at ¶ 118. Although he and this young woman are no longer together, Mr. Figueroa is active in his son's life. He and his son's mother have an informal custody arrangement, and he provides child support on an as needed basis. *Id.* at ¶¶ 118, 120.

Having spent his teen years battling cancer, as a young adult, Mr. Figueroa found himself in search of social acceptance. Unfortunately, he fell in with the Latin Kings street gang. As a result, he is now before this Court, charged with conspiracy to conduct enterprise affairs through a pattern of racketeering activity.

After making the serious mistake of associating with this group, Mr. Figueroa made even graver mistakes. First, he fired a shot out of a car window in the general direction of another person. However, he neither harmed, nor intended to harm this individual. Mr. Figueroa stated as much while unknowingly being tape recorded by a cooperating witness after the event. PSR ¶ 58. Moreover, in an attempt to maintain his status within the group, he also foolishly boasted of his membership in a series of rap videos. *Id.* at ¶¶ 59-73.

Notably, unlike some of his co-defendants, Mr. Figueroa was a low-level member of the group who did not hold a leadership position.

Upon his arrest, Mr. Figueroa, feeling remorse and wanting to accept responsibility for his actions, decided to plead guilty and enter into a plea agreement. Plea Agreement, ECF No. 1296. His decision to do so is reflective of his true character.

Many of Mr. Figueroa's friends and family members have written letters to this Court describing the kind of person he is.[1] His father, Juan Figueroa Sr., writes: "[W]hen it comes to family and loved ones, he'll drop anything just to be present for us. He is an outstanding role model to his siblings, a great father to his 6 year old son, and a great son to his mother and I." Exhibit A at 13. Similarly, Mr. Figueroa's mother, Magali Figueroa, describes him as a "loving, kind, family oriented, … good young man … [who is] an exceptional Dad to his … son…." *Id.* at 16.

His sister, Caridad Pizarro, states: "When I was younger and my mother was really busy, he would be the one to take care of me, my younger brother, and the household." *Id.* at 8. Mr. Figueroa's brother describes him as his "greatest protector and … best friend." *Id.* at 27. His

---

[1] The letters are attached hereto as Exhibit A. The home addresses of private parties and names of minor children have been redacted in the public ECF filing. Unredacted letters have been provided separately to the Probation Office and the U.S. Attorney's Office.

brother recalls that, "[g]rowing up[,] he … always made sure that I kept my mind and eyes on the right path – that I need to work hard to become an intelligent and hardworking young man." *Id.*

Mr. Figueroa's partner, Melody Roman, describes him as "one of the most loving people I know." *Id.* at 22. She notes that "[h]e is amazing with her" young daughter. *Id.* Ms. Roman explains that "[t]he bond between him and my daughter is something so pure and beautiful, something we all know is rare for a man to do – pick up another man's slack." *Id.* at 23.

Going forward, Mr. Figueroa plans to live his life in accordance with his values. He knows that he needs to do so, not only for himself, but also for his son, Ms. Roman, and her daughter. Upon his release, Mr. Figueroa hopes to turn his passion for cooking into a profession. His dream is to attend culinary school and become a chef. Fortunately, he has a strong support network of family and friends committed to helping him achieve his goals and become a contributing member of society.

        2.   <u>The Nature and Circumstances of the Offense</u>

Mr. Figueroa has already admitted that he engaged in a conspiracy to conduct enterprise affairs through a pattern of racketeering activity. He has acknowledged his role, accepted responsibility for his actions, and exhibited genuine contrition. However, without diminishing from his remorse and his full acceptance of responsibility, Mr. Figueroa respectfully submits that, as the parties agreed in the plea agreement, the underlying racketeering activity is aggravated assault, rather than attempted murder. ECF No. 1296, at 2 (Plea Agreement).

As he noted in his objections to the Presentence Investigation Report, although Mr. Figueroa fired one shot from a pistol in the general direction of another person, he did not intend to hit that person or anyone else. Additionally, no one was hit. In fact, after the event, while

unknowingly being tape recorded by a cooperating witness, Mr. Figueroa stated: "So it wasn't like I was directly trying to aim at them or nothing." PSR ¶ 58.

### B. Just Punishment and Deterrence

The recommended sentence of 15 months' incarceration, 36 months supervised release, and a $100 special assessment is a severe sentence that will provide adequate deterrence and promote respect for the law. Prior to his arrest on these charges, Mr. Figueroa had no criminal convictions. PSR ¶ 98-101. Moreover, he has pleaded guilty and expressed remorse for his actions and the bad judgment that led to his criminal conduct. Accordingly, there is no need for Mr. Figueroa to spend more than 15 months incarcerated.

A lengthier prison sentence is not necessary to deter him from committing another crime in his life. The First Circuit has recognized that deterrence does not necessarily equate to incarceration. *See generally United States v. Prosperi*, 686 F.3d 32 (1st Cir. 2012). Indeed, Judge Stearns' remarks at the sentencing hearing in *Prosperi* apply forcefully to this case:

> I think it is very difficult at times, for those of us who are judges or prosecutors or lawyers, to put ourselves in the shoes of a person with no prior experience with the criminal justice system who finds himself or herself accused of a crime. I do not think, sometimes, we fully recognize the anguish and the penalty and the burden that persons face when called into account, as these men are, for the wrong that they committed.

*Prosperi*, 686 F.3d at 48 (noting that the burdens of the criminal process on the defendants would provide adequate specific deterrence). Mr. Figueroa comes before this Court with no prior criminal convictions, having pleaded guilty and expressed remorse. Under such circumstances, a sentence of 15 months' incarceration is appropriate.

### C. The Kinds of Sentences Available and the Sentencing Guidelines

The guideline range is calculated as follows:

6

| | |
|---|---|
| Base Offense Level (U.S.S.G. §§ 2E1.1(a)(2); 2A2.2) | 21 |
| Acceptance of Responsibility (U.S.S.G. § 3E1.1(a)) | -2 |
| Acceptance of Responsibility (U.S.S.G. § 3E1.1(b)) | -1 |
| Total Offense Level: | 18 |

Mr. Figueroa's criminal history category is I.

The sentencing range agreed to by the parties in the plea agreement is 15-27 months. ECF No. 1296, at 3 (Plea Agreement).

### D. Avoiding Sentencing Disparities

In determining an appropriate sentence, the Court should take into account "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Although many of Mr. Figueroa's co-defendants have yet to be sentenced, at least two have been sentenced to terms of incarceration below the guidelines ranges agreed upon in their respective plea agreements. *See*, *e.g.*, ECF No. 1077, at 2-3 (Alvin Mojica plea agreement); ECF No. 1419, at 2 (Alvin Mojica judgment); ECF No. 1157, at 2-3 (Henry Caribe plea agreement); ECF No. 1443, at 8 (Henry Caribe judgment). Accordingly, a sentence at the low end of the range agreed upon in the plea agreement is reasonable here, and a greater sentence would create unwarranted disparities.

### E. Request for Judicial Recommendation

Mr. Figueroa respectfully requests that the Court recommend that the Bureau of Prisons designate a facility near his family in Boston, Massachusetts.

### III. Conclusion

For the foregoing reasons, Mr. Figueroa respectfully requests that the Court sentence him to 15 months of incarceration, 36 months of supervised release, and a $100 special assessment.

Respectfully submitted,

/s/ *Joshua N. Ruby*
George W. Vien (BBO# 547411)
Joshua N. Ruby (BBO# 679113)
Abigail M. Kuhn (BBO# 704807)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
(617) 720-2880
gwv@dcglaw.com
jnr@dcglaw.com

Dated: December 4, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 4, 2020.

/s/ *Joshua N. Ruby*
Joshua N. Ruby